## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

NORTHERN NATURAL GAS COMPANY,

Plaintiff,

vs.

80 ACRES OF LAND IN THURSTON COUNTY, NEBRASKA; et al.,

Defendants.

8:17-CV-328

MEMORANDUM AND ORDER

This dispute involves the renewal of a right-of-way across tribal and allotted lands located within reservation boundaries of the Omaha Tribe of Nebraska. The plaintiff, Northern Natural Gas, filed this suit seeking to condemn individually owned interests in two parcels of allotted land: Allotment No. 742-2 and Allotment No. 742-4. The defendants in this case each have an individual interest in Allotment No. 742-2, Allotment No. 742-4, or both.

One of the individual interest holders, Nolan J. Solomon, has filed a motion to dismiss (filing 51) Northern's complaint. Northern has also moved for summary judgment (filing 52). For the reasons that follow, the Court will grant Northern's motion for summary judgment and deny Solomon's motion to dismiss.

## BACKGROUND

The Court's prior Memorandum and Order (filing 49) set forth the background of this case in detail. Generally speaking, Northern Natural Gas owns and operates a pipeline system spanning much of the Midwest. Filing 30

at 2. In 1931, Northern obtained a right-of-way allowing three of its pipelines to cross the Omaha Tribe's Reservation located in Thurston County, Nebraska. Filing 30 at 2-3. That right-of-way was renewed in 1992 for a thirty-year term set to expire on February 7, 2018 ("the original ROW"). Filing 37-2.

In anticipation of the original ROW's expiration, Northern initiated a renewal process with the Bureau of Indian Affairs ("BIA"). Filing 30 at 3-4. This process, at least originally, went smoothly: Northern and the Omaha Tribe entered into an agreement to renew the rights-of-way across tribal trust lands ("the New ROW"), *see* filing 37-3 at 1-7, a majority of the individual interest holders in Allotment No. 742-2 and Allotment No. 742-4 consented to that grant, *see* 25 U.S.C. § 324, and the BIA approved the New ROW and granted Northern the right-of-way, *see* filing 37-5. But at some point, one of the individual interest holders in Allotment No. 742-2 and Allotment No. 742-4 withdrew his consent. Filing 30 at 3. That meant Northern would need to acquire its right-of-way across Allotment No. 742-2 and Allotment No. 742-4 by virtue of condemnation rather than agreement. *Compare* 25 U.S.C. § 324 *with* 25 U.S.C. § 357.

So, Northern filed the underlying complaint seeking condemnation of the Allotments. *See* filing 30 at 1-7. A few weeks after this condemnation action was initiated, one of the individual interest holders in Allotment No. 742-2 and Allotment No. 742-4, Nolan J. Solomon, deeded a fractional interest to the United States in trust for the Omaha Tribe. Filing 37-6; filing 37-7. In a previous round of briefing, Solomon argued that conveyance prevents Northern from condemning any interests in Allotment No. 742-2 and Allotment No. 742-4. In light of the Tribe's consent to the right-of-way, the Court rejected that argument and determined that Northern could condemn the remaining non-tribal interests in those parcels. *See* filing 49 at 8-9

Now Solomon moves to dismiss Northern's complaint on different grounds: that the Tribe must be joined to the proceeding as a necessary party. *See* filing 51 at 1. And Northern, for its part, has moved for summary judgment alleging that there is no genuine dispute regarding the value of Solomon's condemnable interest. Filing 53 at 1. For the reasons discussed below, the Court will deny Solomon's motion to dismiss and grant Northern's motion for summary judgment.

## STANDARD OF REVIEW

### 12(B)(7)

When deciding a motion to dismiss under Rule 12(b)(7), the Court must first determine if the party is a "necessary party" under Rule 19(a)(1). *Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 490 (8th Cir. 2006). If the party is "necessary," and joinder would not deprive the Court of subject matter jurisdiction, then the Court must join the party. Fed. R. Civ. P. 19(a). If, however, the necessary party cannot be joined because the joinder would deprive the Court of subject matter jurisdiction, then the Court must determine under Rule 19(b), if "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." *Baker Grp.*, 451 F.3d at 491.

There are four factors to consider when determining if efficiency and fairness demand the party be joined under Rule 19(b). Those factors, generally, include (1) the extent a judgment rendered in the person's absence might prejudice that person or the existing parties, (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P

19(b); *see Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015). The Rule 19 inquiry is a pragmatic rule whose application turns on considerations of efficiency and fairness in the particular case. *See Baker Grp.,* 451 F.3d at 490; *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 134 (1st Cir. 1989); *see also Ranger Transp., Inc. v. Wal–Mart Stores*, 903 F.2d 1185, 1187 (8th Cir. 1990).

## RULE 56(A)

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the

jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

### I. SOLOMON'S MOTION TO DISMISS

Very generally, Solomon argues that the Court should dismiss the underlying condemnation action because Northern has failed to join the Omaha Tribe—a party that, according to Solomon, is required under Fed. R. Civ. P. 19(a) and 71.1. Filing 51 at 1. Northern, however, contends that the Tribe is not a required party and that dismissal of its complaint is improper. Filing 56 at 2. That is true, Northern suggests, because it is only seeking to condemn non-tribal interests in Allotments No. 742-2 and No. 742-4 and the Tribe has already contractually agreed to rights-of-ways across tribal land—including those crossing Allotments No. 742-2 and No. 742-4. Filing 56 at 2.

There are two rules governing the joinder of a party in a condemnation proceeding. The first, Rule 19(a), governs when a party must generally be joined to a lawsuit. In relevant part, Rule 19 requires that a person must be joined as a party if in that person's absence, "the court cannot accord complete relief among existing parties[,]" or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may "impair or impede the person's ability to protect that interest." *See* Fed. R. Civ. P. 19(a)(1). If a person is required under Rule 19(a), the analysis continues to 19(b)—instructing the Court to determine if "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

The second and more specific rule, Rule 71.1(c), governs the joinder of all interests holders in the property at issue in a condemnation action. That rule provides that

> the plaintiff need join as defendants only those persons who have or claim an interest in the property and whose names are then known. But before any hearing on compensation, the plaintiff must add as defendants all those persons who have or claim an interest and whose names have become known or can be found by a reasonably diligent search of the records, considering both the property's character and value and the interests to be acquired.

Fed. R. Civ. P. 71.1(c).

With those requirements in mind, the basic question before the Court is this: does the Tribe have an interest in the land Northern seeks to condemn making it impossible for the Court to accord complete relief among existing parties? *See generally* Fed. R. Civ. P. 19(a)(1); Fed. R. Civ. P. 71.1(c). That is, does the Tribe's fractional interest in Allotments No. 742-2 and 742-4 require its addition to the lawsuit, as Solomon argues? *See* filing 51 at 5. Or does the fact that the Tribe has already consented to the rights-of-way crossing Allotments No. 742-2 and No. 742-4 mean that the Tribe is not a required party, as Northern argues? *See* filing 56 at 2.

To support why, in his view, the Tribe must be joined as a party, Solomon relies on two Tenth Circuit decisions, (1) *Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 893 (10th Cir. 1989), and (2) *Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1104 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1695, 200 L. Ed. 2d 965 (2018). But those cases are easily distinguishable.

To begin, *Enter. Mgmt. Consultants, Inc.*, involved an attempt by the plaintiff to declare two contracts valid. 883 F.2d at 893. Those contracts were between Enter Management and Citizen Band Potawatomi Tribe of Oklahoma. But the tribe was no longer a party to the suit. *Id.* And the Court concluded it was impossible for the tribe to protect its interest in the agreement without being joined to the action making the tribe a required party under Fed. R. Civ. P. 19(a). *Id.* This case, however, involves a property dispute—not a contract dispute. Filing 1 at 4-6. And more specifically, it involves a dispute over the value of non-tribal interests in two parcels of land—not tribal interests in a tribal contract. Filing 1 at 4-6. So, Salmon's reliance on *Enter. Mgmt. Consultants, Inc.* is unpersuasive.

And Solomon's reliance on *Barboan* does not fare any better. In that decision, the public utility company brought a condemnation action against the individual interest holders to obtain a right-of-way across two parcels of land in which the Navajo Nation held a fractional interest. *Barboan*, 857 F.3d 1101. There, the lower court concluded, and the Tenth Circuit agreed, that the Nation was a required party to the condemnation action under Fed. R. Civ. P. 19(a) because the Nation owned a fractional interest in the land to be condemned, but could not be joined because of sovereign immunity. 857 F.3d at 1113 n.1. And although those facts appear, at least on the surface, to be similar to those at issue here, there is one glaring difference: tribal consent.

In particular, the *Barboan* decision lacked any, much less sufficient, evidence to suggest that the Nation had consented to the rights-of-way across the allotments. *Id.* That meant that the utility company was, in essence, seeking to condemn tribal interests in tribal land as well as individual interests. *Id.* And because tribal interests were implicated by the condemnation action, the Nation was a required party. *Pub. Serv. Co. of New*

*Mexico*, 167 F. Supp. 3d 1248 at 1263 ("interest in property to be condemned must be joined as parties."). But here, Northern is only seeking to condemn *non*-tribal interests in Allotments No. 742-2 and No. 742-4. And because the Tribe has consented to the rights-of-ways across tribal land within its reservation boundaries—including Allotments No. 742-2 and No. 742-4, *see* filing 49 at 7-8, the absence of the Tribe from the underlying action does not, and cannot, "impair or impede" the Tribe's ability to protect its interest in those Allotments. See Fed. R. Civ. P 19(a).

So, while the Court agrees that there are many instances where a tribe has an interest—economic, sovereign, or otherwise—in an underlying dispute requiring its joinder to the litigation, this is not one of them.[1] The Tribe is not a required party under Fed. R. Civ. P 19(a) or 71.1(c), and the Court will deny Solomon's motion to dismiss.

## II. Northern's Motion for Summary Judgment

Northern has also moved for summary judgment. Generally speaking, Northern argues that because the value of Solomon's condemnable interest is not disputed, judgment is appropriate. In support of that contention, Northern has offered two expert appraisals demonstrating the purported value the condemnation action. *See* Filing 54-2 at 97; filing 54-3 at 16.

The first appraisal, authored by certified appraiser David Baker, opined that the value of the taking was $0.00. Filing 54-2 at 97. The second appraisal, performed by Pat McGlamery, staff appraiser for the Eastern Oklahoma

---

[1] Solomon's briefing appears to seek reconsideration of the Court's previous determination that the Tribe consented to the rights-of-ways. Filing 51 at 5; *see* filing 49 at 8. The Court, however, declines to reconsider its previous determination. And Solomon has not provided the Court with any reason why reconsideration is appropriate.

Region of the United States Department of Interior's Bureau of Indian Affairs, concluded the same. Filing 54-3 at 16. In reaching those conclusions, both appraisals applied the "Before and After" valuation method (*i.e.*, the difference, if any, between the market value of the unencumbered and encumbered parcel). That valuation method was employed because the general rule for condemnation actions is that "[w]hen land is taken by eminent domain, and the title acquired is not a fee, but merely an easement, the proper measure of damages is the difference between the market value of the land free of the easement and the market value as burdened with the easement." *United States v. 1,129.75 Acres of Land, More or Less, in Cross & Poinsett Ctys.*, 473 F.2d 996, 998 (8th Cir. 1973); *see Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 21 (5th Cir. 1969); *Calvo v. United States*, 303 F.2d 902, 909 (9th Cir. 1962); *Karlson v. United States*, 82 F.2d 330, 337 (8th Cir. 1936).

But even so, at some point, Baker submitted an updated appraisal utilizing the "taking plus damages" valuation method. This alternative valuation was used because, at times, "the market may not be sensitive enough to reflect the impact of a subsurface acquisition on the value of an agricultural property using the traditional Before and After methodology." Filing 54-2 at 5. And because Allotments No 742-2 and No. 742-4 are agricultural, Baker used the "takings plus damage" in his updated report. Filing 54-2 at 5. This method revealed that the value of the New ROW on parcel 742-4 is $734 and the value of the New ROW on parcel 742-2 is $2,984. *See* Filing 54-2 at 78, 98.

Northern neither disputes the use of the "takings plus damage method," nor that the value for the New ROW on parcel 742-4 is $734 and the value of the New ROW on parcel 742-2 is $2,984. *See* filing 53 at 9. And Solomon has not provided the Court with any evidence refuting that valuation either. Filing

54-4 at 12. Instead, Solomon's arguments are twofold: (1) the BIA did not approve the $3,718.00 appraisal, and (2) that appraisal is not correct.

Solomon's former contention is easily disposed of. Specifically, Solomon takes issue with the fact that the BIA failed to "determine the valuation" of the rights-of-ways. Filing 55 at 1; 25 C.F.R. § 169.114. That is, Solomon claims the BIA must perform or approve the appraisal being used. But Solomon has not provided the Court with any authority suggesting that the BIA is required to approve the valuation of a condemnation action involving non-tribal interests. And even assuming such a requirement exists, Solomon's argument still fails. Indeed, in August 2015, the BIA did undertake a valuation analysis for the rights-of-way. Filing 54-3 at 18; *see also* filing 54-4 at 14. *See* filing 54-3 at 60. Specifically, BIA staff appraiser Pat McGlamery inspected the property and opined that "there is no loss of Market Value that can be attributed to this pipeline Right of Way". Filing 54-3 at 18; *see also* filing 54-4 at 14; filing 54-3 at 56. That conclusion was further reviewed and certified by Eric Paul Griffin, Review Appraiser Quality Assurance for the U.S. Department of Interior. Filing 54-3 at 56, 62.

So, contrary to Solomon's contention, the BIA did appraise and review the value of the rights-of-way across Allotments No. 742-2 and No. 742-425. *See* filing 54-3 at 62; filing 54-3 at 112. And the Court is not persuaded by Solomon's contention that the interest holders are somehow disadvantaged by the fact that Baker's appraisal, which resulted in a *higher* valuation than the appraisal performed and certified by the BIA, was not conducted by the BIA itself. *See* filing 55 at 1.

That leaves Solomon's latter contention, that Northern's valuation evidence is not supported by the facts in this case. *See* filing 55 at 1. But Solomon has provided the Court with no argument, much less evidence, to

suggest that Northern's methodology is unreliable. In fact, when asked if he had any reasons to disagree with the ultimate valuation, Solomon admitted he did not. *See generally* Filing 14 at 256; filing 54-4 at 15. Instead, Solomon's issue with the ultimate valuation appears to rest solely on the fact that the appraisal is different than the original offer on the table—$300.00 per rod in exchange for consent to the rights-of-ways.[2] *See* filing 54-4 at 11.

Solomon uses that initial offer to support his contention that the proper valuation of the right-of-way is $900.00 per rod. He apparently reaches that conclusion by taking Northern's initial offer (*i.e.,* $300.00 per rod) and multiplying it by "the volume going through the lines." Filing 54-4 at 12. Solomon claims he decided on this approach (*i.e.,* the volume in the line approach) by performing "research online" concerning oil and gas appraisals. Filing 54-4 at 12-13.

But Solomon's purported methodology is not sufficient to oppose Northern's motion for summary judgment. Indeed, appropriate evidence "must be made on personal knowledge" on matters the declarant is "competent to testify on." Fed. R. Civ. P. 56(c)(1)(4). And Solomon does not have any personal knowledge to support his valuation. See filing 54-4 at 12-13. More fundamentally though, Solomon—who admits he has no training regarding how to value interests in land, has never received any certifications involving land valuation, and is not a certified appraiser—is not competent to testify on the valuation of a pipeline easement. *See* filing 54-4 at 7, 12.[3]

---

[2] A rod is a unit of land measurement equal to 16.5 feet. Black's Law Dictionary (10th ed. 2014).

[3] The Court recognizes that in some instances, the owner of land may be competent to testify to its market value for these purposes. *See United States v. 3,698.63 Acres of Land, More or*

So, in the absence of appropriate evidence contradicting the methodology or ultimate conclusion of the appraisal evidence submitted by Northern, no genuine issues of material fact remain for trial. The only evidence before the Court is that the value of the interests Northern seeks to condemn is, at the very most, $3,718.00. Accordingly, the Court will grant Northern's motion for summary judgment in its entirety.

### III. MOTION TO STRIKE

As a final matter, the Court will deny Solomon's motion to strike (filing 55) Northern's motion for summary judgment. Although it is not entirely clear to the Court, Solomon actually seems to be seeking to strike Solomon's appraisal reports. *See* filing 55 at 1. In support of that motion, Solomon argues that the appraisals are from "NGG contractors" rather than BIA appraisals. *See* filing 55 at 1. But as discussed above, that argument is without merit, and Solomon's motion will be denied.

IT IS ORDERED:

1. Solomon's motion to dismiss (filing 51) is denied.

2. Solomon's motion to strike (filing 55) is denied.

3. Northern's motion for summary judgment (filing 52) is granted.

---

*Less, in Burleigh, Emmons & Morton Ctys., State of N. D.*, 416 F.2d 65, 68 (8th Cir. 1969). But Solomon's opinion is not based on his familiarity with the land, or even market value—it was based on Northern's settlement offer and the capacity of the pipeline, not any knowledge he had as a landowner. *Compare id.* at 65-69, *with, e.g.*, filing 54-4 at 11-13.

4. Upon deposit with the Clerk of the amounts referenced below, Northern is entitled to a judgment establishing its right of way easement to wit:

> Three right-of-way easements across each of Parcel One and Parcel Two (as shown on the plats of the proposed easements attached to the Amended Complaint as Exhibit "B" and as legally described on Exhibit "C" thereto), for a period commencing February 8, 2016 and expiring February 9, 2046. The easements are for purposes of allowing Plaintiff to construct, maintain, operate, inspect, repair, replace, protect, alter, and remove pipelines and below ground appurtenances, including cathodic protection apparatus, on, over, under, across, and through a strip of land one hundred feet (100') in width, together with the right of ingress to and egress from said right-of-way across the adjacent property of the Interest Holder for the purpose of surveying and clearing the right-of-way of brush, trees, and obstructions, and for constructing, maintaining, operating, inspecting, repairing, replacing, protecting, altering, or removing the pipelines and appurtenances of Plaintiff located thereon, in whole or in part, at the will of the Plaintiff. The easements are to be subject to the right of the Interest Holders to use the property for all purposes which will not interfere with the use of the right-of-way for Plaintiff's purposes; provided, however, that

no building, structure, improvement, landscaping or obstruction, other than ordinary and usual agricultural fences, shall be placed within or upon the easement by Interest Holders and no alteration of the ground surface or grade of the right-of-way shall be made by the Interest Holders without the Plaintiff's express written consent and the Plaintiff shall not be liable for damages caused on the right-of-way by keeping the right-of-way clear of such trees, brush, undergrowth, landscaping, buildings, structure, improvements, residential fences and other obstructions in the exercise of its rights.

5. That the value of the New ROW on Allotment No 742-4 is $734.00 and the value of the New ROW on Allotment 742-2 is $2,984.00, and the sums shall be deposited with the Clerk forthwith.

6. A separate judgment will be entered upon deposit of the above referenced amounts.

Dated this 23rd day of October, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge